UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff-Respondent,<br><br>     v.<br><br>JUAN ANTONIO ZAVALA,<br><br>                Defendant-Movant. | Case No. 1:09-cv-00212-BLW<br>         1:02-cr-00079-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

      Pending before the Court is Juan Antonio Zavala's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. 14).  Having reviewed the Amended Motion, the Government's Response (Dkt. 21), Zavala's Reply (Dkt. 26), and the underlying criminal record, and having conducted an evidentiary hearing, the Court enters the following Order denying the Amended Motion for the reasons stated at the conclusion of the hearing and set forth below.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

Following a jury trial, Zavala was convicted of (1) conspiracy to distribute and to possess with intent to distribute methamphetamine, cocaine, and ecstasy in violation of 21 U.S.C. §§ 841(a)(1) and (846), and (2) distribution of 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  Given the uncertainties surrounding the constitutionality of the sentencing process at the time, the Court convened a jury to hear evidence at the sentencing hearing which occurred over a period of three days from January 10 through January 12, 2005.

On the third day of the sentencing hearing, the United States Supreme Court decided the seminal case of *United States v. Booker*, 543 U.S. 220 (2005), effectively rendering the United States Sentencing Guidelines advisory.  After reviewing the decision, the Court discharged the jury having determined that *Booker* allowed it to make the necessary evidentiary findings without a jury.  At the conclusion of the evidentiary portion of the hearing, the Court found a higher drug quantity than the Probation Officer had found in the Presentence Report ("PSR").  Accordingly, the total offense level increased from 41 to 43. The Court set the actual sentencing portion of the hearing for a later date.  *Minutes*, Dkt. 990.

On February 25, 2005, the Court sentenced Zavala to a term of imprisonment of 360 months despite a guideline range of fixed life.  On March 24, 2008, the Ninth Circuit, in an en banc decision, affirmed the reasonableness of the sentence on appeal.

*See United States v. Zavala*, 520 F.3d 984 (9th Cir. 2008) (en banc).  The Supreme Court subsequently denied Zavala's petition for a writ of certiorari on May 19, 2008, rendering his conviction final.  *See Zavala v. United States*, 128 S.Ct. 2491 (2008).

On May 6, 2009, Zavala filed a § 2255 Motion (Dkt. 1) which was deficient in several respects.  However, the Court liberally construed the motion and concluded that Zavala had sufficiently stated a claim of ineffective assistance of counsel.  *Order*, Dkt. 6.  The Court appointed counsel to confer with Zavala, review the record, and file an amended motion alleging any specific grounds of ineffective assistance of counsel that counsel deemed had merit.  *Id*.

On March 5, 2010, Zavala, through appointed counsel, filed the pending Amended § 2255 Motion alleging that defense counsel provided constitutionally deficient representation by failing to negotiate and communicate plea offers and by failing to investigate and present mitigation evidence at sentencing.  The Court determined after reviewing the Government's Response and Zavala's Reply that an evidentiary hearing was warranted to resolve the factual disputes revealed by their respective accompanying affidavits concerning communications outside the record.  *Order*, Dkt. 27.

On December 1, 2011, the Court held an evidentiary hearing at which Executive Director of the Federal Defender Services of Idaho Samuel Richard Rubin, Maria deRosario Garcia (Zavala's mother), and Zavala testified in support of the Amended § 2255 Motion, and AUSA Monte Stiles and defense counsel Dennis Charney testified on

behalf of the Government.  *Minutes*, Dkt. 39.  At the conclusion of closing arguments, the Court denied the Amended § 2255 Motion and advised that it would issue an Order to that effect.  *Id*.

## STANDARD OF LAW

The well-established two-prong test for evaluating ineffective assistance of counsel claims is deficient performance and resulting prejudice.  *See Strickland v. Washington*, 466 U. S. 668 (1984).  Mere conclusory allegations are insufficient to state a claim of ineffective assistance of counsel.  *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).

In order to establish deficient performance, a defendant must show that counsel's performance "fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  Under the performance prong, there is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance."  *Id*. at 689.  This is so because for the defendant, "[i]t is all too tempting . . . to second-guess counsel's assistance after conviction or adverse sentence. . . ."  *Id.*  For the court, "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  *Bell v. Cone*, 535 U.S. 685, 702 (2002) (discussing *Strickland*).

In order to establish prejudice, a defendant must affirmatively prove by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  The *Strickland* standard is "highly demanding."  *Kimmelman v. Morrision,* 477 U.S. 365, 381-82; 386

**MEMORANDUM DECISION AND ORDER - 4**

(noting that the court should "assess counsel's overall performance throughout the case" when evaluating whether his assistance was reasonable).

Both prongs of the *Strickland* test must be met "before it can be said that a conviction (or sentence) 'resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable' and thus in violation of the Sixth Amendment." *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687).

At the time of the hearing, it was well established in the Ninth Circuit that failure to communicate a plea offer and ensure that the defendant understands the terms and significance of the offer could constitute ineffective assistance of counsel. *See United States v. Rivera-Sanchez*, 222 F.3d 1057, 1060-61 (9th Cir. 2000). Furthermore, it was well established that failure to advise a client to enter a plea bargain that is in his best interest can also constitute ineffective assistance of counsel. *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003) (citing *Boria v. Keane*, 99 F.3d 492, 497 (2d Cir. 1996)).

Since the hearing, the Supreme Court has held that if a defendant rejects a plea agreement based on ineffective assistance of counsel, he can demonstrate prejudice if the lost plea opportunity leads to a trial that results in a conviction on more serious charges or a more severe sentence. *Lafler v. Cooper*, 132 S.Ct. 1376, 1387 (2012).

## ANALYSIS

**1.    Ineffective Assistance of Counsel at Plea Stage**

Zavala was represented at all stages of this case, including appeal, by attorney Dennis Charney. At the conclusion of the evidentiary hearing, the Court noted that there was no evidence that Mr. Charney had failed to present a plea offer or that he had not appropriately advised Zavala of the pros and cons, dangers and benefits, and consequences of accepting or rejecting a plea offer with cooperation.

AUSA Stiles testified that the Government was not interested in a plea agreement without cooperation. It was absolutely clear from his and Mr. Charney's testimony that throughout the case, Zavala had no desire to cooperate with the Government. In fact, Zavala confirmed AUSA Stiles' testimony that he, Zavala, had refused to plead guilty even after Amanda Mcerquiaga, the mother of his children, pleaded with him to do so during the trial.[1]

Based on the uncontradicted testimony, the Court limited Zavala's ineffective assistance of counsel claim to the failure to advise him of the possible benefits of pleading guilty without a plea agreement. The Court then found that Mr. Charney had not failed to so advise Zavala.

---

[1] After the jury was selected and the Government was presenting witnesses, AUSA Stiles met with Amanda Mcerquiaga prior to her testimony. Because she was "hysterical" and afraid of testifying against Zavala, AUSA Stiles allowed her to meet with Zavala before she testified to try to persuade him to plead guilty. However, Zavala refused to talk to her and pretended that he did not speak English. Mr. Charney testified that he was present at the conversation between Ms. Mcerquiaga and Zavala, that she was very distraught, and that he (Mr. Charney) was stressed because he thought Zavala should plead guilty so he would have a chance of spending some time with his children when they were in their late teens. Finally, Zavala confirmed that Ms. Mcerquiaga had tried to convince him to cooperate with the Government and that he refused.

Zavala testified that Mr. Charney did not advise him of the benefit of pleading without a plea agreement. On the other hand, Mr. Charney testified that he repeatedly advised Zavala of the option of pleading without a plea agreement given that the guideline range would likely be fixed life if he proceeded to trial and was convicted. The Court found Mr. Charney's testimony credible by clear and convincing evidence. In doing so, the Court noted that Mr. Charney, who had appeared before the Court for many years, was the only attorney in its experience with a reputation for being more than willing to have his client plead guilty without the benefit of a plea agreement.

Addressing the second *Stickland* prong, the Court found that Zavala suffered no prejudice even if Mr. Charney's performance had been deficient. Assuming a three-level adjustment for acceptance of responsibility had Zavala pleaded guilty, his offense level would have been reduced from 43 to 40. With Zavala's criminal history category of III, his guideline range would have been reduced from fixed life to 360 months to life. The Court had actually sentenced Zavala at the bottom of that resulting guideline range.

The Court rejected Zavala's argument that if Zavala had pleaded guilty perhaps the Government would not have presented evidence increasing the drug quantity beyond that found in the PSR. In rejecting the argument, the Court noted that AUSA Stiles' testimony presumed a fixed life sentence, that he went to great pains to present evidence of the increased drug quantity before a sentencing jury, and that he appeared motivated to obtain the highest sentence possible. Furthermore, to "rewind" the clock and predict

what the Government would or would not have done is clearly an exercise in speculation.

The Court is confident that it would have imposed the same 360-month sentence had the guideline range been 360 to life.  Therefore, Zavala has failed to meet the prejudice prong of the *Strickland* test for ineffective assistance of counsel regarding the plea stage of the proceeding.

**2.      Ineffective Assistance of Counsel for Failure to Investigate Mitigation Evidence**

The Court decided the deficient performance prong of the mitigating evidence issue against the backdrop of the then-changing sentencing landscape.  At the time the sentencing hearing commenced in January, the Supreme Court had not yet decided *Booker*.  There was not the focus on the nature and characteristics of the defendant that there is today.  Mental and emotional conditions as well as drug or alcohol dependence or abuse were not grounds for a downward departure unless present to an unusual degree. *See* USSG § 5H1.3 (Policy Statement) and § 5H1.4 (Policy Statement).  Lack of guidance as a youth and "similar circumstances indicating a disadvantaged upbringing" likewise were not relevant grounds for a departure.  *See* § 5H1.12 (Policy Statement).

Zavala testified at the evidentiary hearing that he was physically abused by his father as a child.  His father frequently hit him very hard with his hands, with his belt, with a rope, and once with a closed fist.  Zavala often had to defend his mother when his father beat her.  His mother's testimony confirmed the abuse, and the Court has no doubt

that it occurred.

According to Zavala's testimony, Mr. Charney asked him only once about his childhood, and he told Mr. Charney that he did not have a very good childhood. On cross examination, however, Zavala admitted that he had never spoken with anyone about his childhood until he went to prison and was asked by someone there if anyone had discussed his childhood in preparation for sentencing.

Mr. Charney confirmed that he had asked Zavala about his childhood. However, the details Zavala provided did not suggest to him that Zavala's upbringing was out of the ordinary. Zavala did not mention anything about childhood abuse, and Mr. Charney saw no reason to pursue further discussion about his childhood. Likewise, Zavala said nothing at the presentence interview, at which Mr. Charney was present, to prompt further inquiry into his childhood. Finally, Mr. Charney testified that even assuming that he had known at the time of sentencing of the abuse that Zavala had suffered, he is not sure that he would have focused on it as a sentencing argument. He would have viewed it as a questionable argument given that departures granted in cases of abuse worse than Zavala's were frequently reversed on appeal.

The Court concluded at the hearing that Mr. Charney had satisfied his duty to investigate mitigating evidence by inquiring about with Zavala's childhood and family life. Once Zavala reported a normal childhood, there was no reason to investigate further. Although Zavala testified that he told Mr. Charney that his childhood was not

good, the fact that Zavala apparently did not tell the presentence writer about any childhood issues and testified that he never discussed his childhood until he went to prison, suggests that Mr. Charney's testimony on the subject is more credible.

Given that family history had only contemporaneously become a significant sentencing issue at the time, foregoing focus on uncovering a potential childhood abuse issue to focus on fighting the drug quantity determination and sentencing argument concerning the effect of *Booker* was a reasonable strategic decision at the time it was made. See *Strickland*, 466 U.S. at 690 (the reasonableness of counsel's challenged conduct is to be viewed as of the time of the conduct). "[S]trategic choices" of counsel are "virtually unchallengeable" and are entitled to "a heavy measure of deference." *Id*. at 90-91.

Particularly apt guidance from *Strickland* is the statement that "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless . . . , counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id*. (noting that counsel's actions are "usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant"). Here, Zavala's description of his childhood as normal or good (or his failure to state that it was otherwise), gave Mr. Charney reason to believe that pursuing further information about his childhood would be fruitless. Zavala cannot now challenge the failure to investigate further as unreasonable.

**MEMORANDUM DECISION AND ORDER - 10**

Even if Mr. Charney's performance was deficient, Zavala cannot show prejudice. As the Court stated at the evidentiary hearing, if the mitigating evidence had been presented to the Court at sentencing, it would not have affected the sentence. One or more forms of abuse – ranging from physical to sexual to emotional to psychological – have occurred in the background of a vast majority of the criminal defendants who have appeared before the Court. Such abuse may, in fact, be the cause of the majority of criminal activity. However, the abuse suffered by Zavala at the hands of his father, while significant, is not the dramatic type of abuse that would have affected the length of the sentence. It was only one factor to be considered among other more significant factors such as the size of the conspiracy, Zavala's role within the conspiracy, the drug quantities involved, the need to protect society from such criminal activity, and the need to deter others from engaging in similar behavior.

## CONCLUSION

Upon reflection and further review of its notes and a rough transcript of the evidentiary hearing, the Court is firmly convinced that the decision announced at the conclusion of the hearing was the correct one.

Zavala was adamant about not wanting to plead guilty throughout the case even when given the opportunity during trial. His claiming ineffective assistance of counsel after he received such a lengthy sentence is a classic example of the second-guessing of counsel's assistance following an adverse sentence that *Strickland* warned against.

*Strickland*, 466 U.S. at 689.  Lost in the second guessing is the fact that without counsel's able assistance, Zavala would likely be serving a fixed life term.  *See Kimmelman*, 477 U.S. at 386 (noting that the court should assess counsel's overall performance when evaluating an ineffective assistance of counsel claim).

Zavala also chose not to advise counsel or the Probation Officer of his abusive childhood.  Perhaps he was motivated by loyalty to his father.  However, whatever the motivation, it, as well as any deficient performance on the part of counsel in not discovering the abuse, is irrelevant.  The abuse was simply not significant enough to override the many other compelling considerations before the Court and would not have led to a further reduction in sentence.

## ORDER

**IT IS ORDERED** that Zavala's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. 14) is **DENIED**.

DATED:  **July 31, 2012**

Honorable B. Lynn Winmill
Chief U. S. District Judge